# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

WAYNE ROOKS, JR.,                                                                        PLAINTIFF
ADC #123435

4:14CV00149-DPM-JTK

DAVID BRADLEY, et al.                                                                  DEFENDANTS

## PROPOSED FINDINGS & RECOMMENDATION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing before the District  Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.       The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

An Evidentiary Hearing was held in this case before the Court on May 20, 2015. Following a presentation of the testimony of the parties and witnesses, and submission of exhibits, the Court enters the following proposed findings and recommendation.

**I.     Introduction**

Plaintiff Wayne Rooks, Jr., a state inmate incarcerated at the Tucker Unit of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983, alleging excessive force, denial of adequate medical care and treatment, and unconstitutional conditions of confinement while he was incarcerated at the Van Buren County Detention Center (Jail) from June 3, 2013, until his transfer to the ADC on January 4, 2014. By Order dated March 3, 2015 (Doc. No. 60), this Court dismissed all claims against all Defendants, except the excessive force claim against Defendant Bradley.[1]  Plaintiff asks for monetary relief from Defendant.

---

[1] The Court appointed attorney Patrick Goss to represent Rooks on March 6, 2015 (Doc. No. 61).

**II.     Factual Findings**

    **A.     Hearing Testimony**

        **1.     Defendant Brandan Ragland**

Ragland worked at the Van Buren County Sheriff's Office from November, 2012, until March, 2014, as a jailer/dispatcher. On June 4, 2013, Fairfield Bay officer Ashlock brought Rooks to the Jail on charges of disorderly conduct and public intoxication. Rooks was intoxicated and very violent and resisted Ragland's attempt to book him; therefore, Ragland and Officer Gary Burroughs took Rooks, handcuffed behind his back, to a detox or holding cell, prior to booking him into the Jail. Before they entered the cell, Ragland asked Rooks to allow him to take off the handcuffs, but Rooks refused and cursed him. Once they entered the cell, Ragland asked Rooks two more times, and both times Rooks refused, cursed him, and said he wanted to fight Ragland. Rooks lunged at Ragland twice; the second time, Ragland wrapped one arm around Rooks' chest and eased him to the ground on his stomach. Ragland then placed his knee on Rooks' back and Rooks continued to resist and kick. Burroughs held on to Rooks' feet, and Ragland tried to unlock the handcuffs but could not gain access to the key hole. He took the taser out of his pocket, removed the cartridge (used to shoot at distances), placed it on Rooks' back, and warned Rooks that he would tase him if he refused to allow him to remove his cuffs. When Rooks continued to resist, Ragland shot him with a single five-second burst from the taser. After that, Rooks relaxed his muscles so that Ragland could remove the cuffs; both officers then left the cell. Ragland included these facts in a report he wrote after the incident. Plaintiff's Exh. 2.

Ragland testified that it was necessary to remove the cuffs from Rooks to prevent him from a possible fall in the cell, since he was still intoxicated. Ragland was trained in and certified to use

a taser and followed the taser policy of the Jail.  Plaintiff's Exh. 6. Officers at the Jail are not permitted to carry guns and although a taser is a control device, the Jail officials use it for protection, as opposed to obtaining compliance from inmates.  He stated that prior to shooting Rooks with the taser, he followed the use of force continuum, by first using verbal commands in an attempt to remove the cuffs, and then by using soft hands on Rooks in taking him to the ground. In addition, although he did have some control over Rooks once he placed him on his stomach on the floor, he did not feel that Rooks was fully restrained at the time because he continued to kick and move around and because Rooks is larger than Ragland.  He stated the factors that affected his decision to use the taser were Rooks' size and strength and Ragland's knowledge that Rooks had been in Jail on previous occasions for fighting and disorderly conduct.  Finally, he stated that during his two-year employment at the Jail he used the taser a total of two-three times.

### 2.     Plaintiff Wayne Rooks

Rooks currently is serving a sentence at the Tucker Unit of the ADC after pleading guilty to a burglary charge in February, 2015.  He was diagnosed as bi-polar while a teenager, and suffered additional physical and emotional injuries in an automobile accident in October, 2009.  He takes Lithium for his bi-polar disorder and Clonazepam and Depacote for epilepsy and seizures.  He was arrested several times for public intoxication and disorderly conduct, but was not incarcerated between 2008 and June 3, 2013, when he was arrested and charged with public intoxication and disorderly conduct, and taken to the Van Buren County Jail.  Although he believes the charges eventually were dismissed, he remained incarcerated at the Jail until January 8, 2014, because his arrest led to revocation of parole on a 2012 terroristic threatening conviction.  He was transferred to the ADC and released in October, 2014.  Rooks then was charged with and pleaded guilty to

burglary in February, 2015, and sentenced to the ADC.

On June 3, 2013, he consumed 12-14 beers while playing golf with his father, and later became stressed while arguing with his father. Although he was intoxicated, he was not "drunk-drunk," but knew when he was arrested that he would be placed in the detox cell. When he arrived at the Jail, he saw Defendant Ragland, knew he was aggressive and had an attitude, and also had heard about incidents at the Jail involving Ragland. When Ragland and Burroughs escorted him to the cell, Rooks stated he felt trapped and afraid that "something was going to happen." He and Ragland cursed at each other, and he tried to get away from Ragland because he did not want him to touch him. He denied lunging at Ragland and denied saying he was going to fight him; rather, he said he was going to "buck" him, meaning he disagreed with Ragland and wanted to get away from him. Rooks testified that the officials at the Jail were aware of his "brain injury" and medical condition, and were not supposed to use the taser on him.

Rooks also testified that the next day he broke a bowl, used a piece of it to cut his wrist, and was placed in a restraint chair. He admitted that Ragland was not involved with this incident. Rooks also admitted to several prior incidents, including: spitting on a Fairfield Bay officer during an arrest, placement in a restraint chair at the Jail, threats made to an individual named Kenny Dunham, and stabbing another inmate with a pencil. He admitted that he was examined at the Arkansas State Hospital in October, 2013, pursuant to Act 3 to evaluate his mental state and determine his fitness to proceed with respect to charges pending against him. Defendant's Exh. 1. According to that evaluation, Rooks was diagnosed as malingering, with alcohol use and depressive disorders, and found to possess a rational and factual understanding of the proceedings against him. (Id.)

### 3. Officer Gary Burroughs

Burroughs has been employed at the Van Buren County Sheriff's Department for five years and served as a Jailer in 2013. He assisted with the booking of Rooks into the Jail on June 3, 2013, and chronicled the events which occurred in the Jail daily log. Defendant's Exh. 3. When Rooks arrived at the Jail he was intoxicated, combative, and jittery, and would not comply with the officers' attempts to book him into the Jail. Therefore, he and Ragland took Rooks to the holding or detox cell, where Rooks jumped around and said he was going to fight. Ragland responded that they were not going to fight, but Rooks lunged at Ragland and tried to hit him with his shoulder on two occasions. Once Ragland took Rooks to the ground, Rooks continued to kick and curse and avoid his attempts to remove the handcuffs. Prior to using the taser on Rooks, Ragland gave him a final warning to comply with their commands, and he refused. Afterward, Rooks was compliant so that they could remove the cuffs, but disregarded their directions to stay on the floor until they left the cell. Instead, Rooks stood up and acted like he wanted to fight again.

According to the Jail's use of force continuum, an officer should first give a verbal warning, followed by the use of soft hands. If that does not work, some kind of force such as a taser, pepper spray, or restraint chair may be used. Burroughs stated Ragland tried numerous times to verbally convince Rooks to allow them to remove the cuffs, and used soft hands in taking Rooks to the floor. He stated that they could not leave him cuffed in the cell because of the risk of danger to him if he were to fall without the use of his arms.

## III. Legal Conclusions

At the time of the matters at issue, Plaintiff was incarcerated at the Jail as a pretrial detainee. While the due process standard of the Fourteenth Amendment applies to determine the

constitutionality of pretrial detainees' conditions of confinement, the standards applied to such claims are the same as those applied to Eighth Amendment claims. See Bell v. Wolfish, 441 U.S. 520, 535 (1979), and Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). In situations involving allegations of excessive force on pretrial detainees, the Courts have applied the Fourth Amendment standard of "objective reasonableness." Wilson v. Spain, 209 F.3d 713, 715-716 (8th Cir. 2000), and Moore v. Novak, 146 F.3d 531, 535 (8th Cir. 1998). The "reasonableness" of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Conner, 490 U.S. 386, 396 (1989). Furthermore, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id . At 396-97. [2] And, Plaintiff also must prove that Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official drew that inference. Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1999).

In this case, Plaintiff did not deny that he refused to obey Defendant's numerous verbal commands to allow him to remove the cuffs. Plaintiff provided no specific facts or evidence to justify his refusal, and even assuming his version of the facts as true (that he did not lunge at

---

[2] In Jones v. Shields, the plaintiff alleging excessive force was a convicted inmate. In analyzing his claims under the objective reasonableness standard, the Court looked to a variety of factors, including "the need for the application of physical force, the relationship between the need for physical force and the amount of force applied, and the extent of injury suffered by the inmate," Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000). In addition, while "not every malevolent touch by a prison guard gives rise to a federal cause of action, ... some actual injury must be shown," and the extent of pain inflicted is considered. Id.

Defendant Ragland), the Court finds Ragland's use of force (single burst of taser) to be more than reasonable, given all the circumstances. Therefore, the Court finds that Plaintiff Rooks did not meet his burden of proof, by the preponderance of the evidence, to show that Defendant Ragland's actions were conducted unreasonably and with knowledge of a substantial risk of harm to Rooks.

**IV.     Conclusion**

IT IS, THEREFORE, RECOMMENDED that Plaintiff's Complaint against Defendant be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 25th day of May, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE